# SUPPLEMENT.

FREDERICK A. BETTS, INSURANCE COMMISSIONER, *vs.* THE
CONNECTICUT INDEMNITY ASSOCIATION.

The charter of the defendant authorized it to do a life insurance business on the assessment plan, and required it to have a minimum working capital of $50,000 which was "in lieu of a reserve" and was to be liable for payment of death claims. *Held :* —

1. That in determining whether its assets were less than three fourths of its liabilities, as alleged by the insurance commissioner in a petition for the appointment of a receiver under General Statutes, § 2869, no value should be assigned to the power of the company to levy assessments, since the obligation of its policy-holders to respond to calls, if any existed, was of so indefinite a nature as to be incapable of valuation as an asset.

2. That the working capital took the place of and was to be treated like the "re-insurance reserve" of ordinary companies, and as such was to be placed among the company's liabilities so far as proceedings in insolvency were concerned.

General Statutes, § 2869, requires a receiver to be appointed if the court or judge shall find that the company's assets are less than three fourths of its liabilities. *Held* that the financial condition of the company was to be ascertained as of the date of the hearing, and that although insolvent at the date of the application, yet if the company had become solvent before the termination of the hearing, it might then file a supplementary answer to that effect and be heard thereon, in accordance with the rules of equity practice.

Unless a company is insolvent there can be no occasion for the termination of its existence and the appointment of a receiver under General Statutes, § 2869.

PETITION by the Insurance Commissioner, under General Statutes, § 2869, for the appointment of a receiver and the annulment of the charter of the defendant company; brought in August, 1898, before a judge of the Supreme Court of Errors (the Superior Court not being in session) and heard in September, 1898, upon issues closed on an answer and supplemental answer.

The latter was filed by permission of the judge, after the

cause had been partly heard, and alleged that since the institution of the proceedings the company had settled the principal part of the overdue claims against it, the existence of which was the ground of the petition, and paid them off at a large reduction from their face amount; whereby its present liabilities were less than its assets.

A finding was made that the allegations of the petition were true, and that the assets of the company at the commencement of the action were less than three fourths of its liabilities, but that the allegations of the supplemental complaint were also true, and that, at the time of the hearing, the assets exceeded its liabilities; whereupon the petition was dismissed, without costs. The company was, however, enjoined by the decree against claiming or setting up any lapses or forfeitures that might otherwise accrue by reason of non-payment of any premiums, dues, or assessments, during the pendency of the proceedings. It was also ordered to send notice of this saving clause in the decree to each of its policy or certificate holders.

*Theodore M. Maltbie* and *James T. Moran*, for the petitioner.

*John W. Alling, Henry Stoddard* and *John P. Kellogg*, for the defendant.

BALDWIN, J. The defendant's charter (10 Special Laws, 616) refers (§ 1) to its object as "assessment insurance in case of death or otherwise, payments for which may be collected annually or otherwise as agreed," and gives it power (§ 2) to "issue policies and certificates of membership." It was also provided (§ 3) that it "shall have a working capital" of not exceeding $250,000, and "may commence business under this charter when fifty thousand dollars shall have been subscribed for and paid in to said working capital, which shall be in lieu of a reserve." The same section declares that if at any time "the funds collected by assessments and set apart as a mortuary or other fund for the payment of" claims for "indemnity in case of sickness, accident, old

age or death, by virtue of a certificate of membership or policy," be insufficient for the purpose, " then said working capital shall be liable for the payment of such claim, and any assets or property of said association may be taken or applied for the payment of the same."

In determining the amount of its assets for the purposes of this proceeding, no value, in my opinion, should be assigned to its power to levy assessments. For assessments which have been actually made and collected, the company is entitled to credit; but it probably has no right of action for any such dues even if levied, which remain unpaid. *Chicago Mut. Life Indemnity Ass'n* v. *Hunt*, 127 Ill. 257, 20 Northeastern Rep. 55; *Lehman* v. *Clark*, 174 Ill. 279, 51 Northeastern Rep. 222. Life insurance, whether offered on the assessment plan, or in return for stipulated premiums, is ordinarily a unilateral contract, and if the holders of the defendant's policies are under any obligation to respond to calls, it is one the nature of which has been left so indefinite as to afford no proper basis for its valuation as an asset.

The charter provision that the working capital " shall be in lieu of a reserve," must be read in view of General Statutes, §§ 2854, 2870, by which the term " re-insurance reserve " is given a precise meaning. The defendant, by reason of its power to assess its policy-holders was relieved of the necessity of maintaining so large a fund of this character as that required in the case of ordinary life insurance companies ; but the place of the fund to the extent of $50,000 (which was the minimum amount that it was required always to maintain),.was equally among its liabilities, so far as regards proceedings in insolvency. Its possession of a certain amount of accumulated capital was demanded for the security of its policy-holders ; and $50,000 is confessedly far less than the amount of what would have been its proper reserve, had it been incorporated to transact the business of life insurance in the ordinary manner.

General Statutes, § 2869, provides that if, upon the hearing of a petition of this character, the assets of the company are found to be less than three fourths of its liabilities, a receiver

shall be appointed. Proceeding upon the basis of estimate stated above, I have found that the assets of the defendant were, when the petition was brought, less than three fourths of its liabilities. I have, however, also found that, pending the petition, its liabilities have been so far reduced that at the date of the hearing they were less than its assets.

In my opinion, the statute makes the time of the hearing (provided the door has been opened by proper pleadings) that as of which the financial condition of the company is to be ascertained. If every claim against the defendant had been discharged, and it owed nothing, except by virtue of its obligation to maintain a working capital of at least $50,000 taking the place of the ordinary insurance reserve, its possession of assets to that amount would clearly make it useless to appoint a receiver. The function of such an officer, under this statute, is to wind up an insolvent company. If the company is not insolvent, there can be no occasion for the termination of its existence. The defendant still has outstanding liabilities, but they amount to less than its assets, and these largely exceed $50,000 in value. There would seem to be no difference, in point of law, between the standing, in a proceeding of this character, of a company which, during its pendency, has absolutely freed itself from debt, and one remaining in debt, but to an amount less than that of its assets. In either case the reason for taking it out of the hands of its directors and into the possession of the court had ceased to exist.

The appointment of a receiver is an equitable remedy, and in all suits in equity the court considers matters arising after their institution, which have been set out by supplemental pleadings, and so moulds the decree as to do justice upon the state of facts shown at the final hearing.

The function which I am called upon to discharge is a judicial one. The judicial power of this State is " vested in a Supreme Court of Errors, a Superior Court, and such inferior courts as the General Assembly shall, from time to time, ordain and establish." Const. Art. V. Whether I am to be regarded as now exercising judicial power vested in the Supreme Court of Errors, or in the Superior Court (*Norwalk Street Railway*

*Company's Appeal*, 69 Conn. 576, 601), it is an equitable power to be exerted (so far as the statute prescribes no different rule) in accordance with equitable doctrines and principles. These led me to allow the supplemental answer to be filed, and since it has been supported by proof, they must dictate what is the appropriate judgment.

The petition is dismissed, without costs; but the decree will be so drawn as to protect policy-holders against any claims of lapse on account of their failure to pay premiums or assessments during the pendency of the action.