THE NEW HAVEN TRUST COMPANY, RECEIVER, *vs.* JOHN B. DOHERTY ET AL.

Third Judicial District, Bridgeport, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In a suit by the receiver of an insurance company against its former officers for wrongful and negligent conduct in engaging and retaining a grossly careless and imprudent agent, it was *held:*—

1. That the inexperience of the defendants in the business of life insurance did not excuse them from exercising such care and skill as ordinarily prudent management required.

2. That the directors of such a corporation could not give away its rights by ratifying the negligent omissions of duty of its corporate officers.

3. That a custom of life insurance companies to accept notes in payment of premiums was no justification to the defendants for accepting from this agent, under a contract with him calling for cash remittances, notes as the equivalent of cash.

4. That it was irrelevant to show that the character of the business written by this agent was as good as that written by the other agents of the company; or that the percentage of losses on policies negotiated by him was no greater than that customary on policies negotiated by other companies; or that it was the custom of reliable insurance companies to make cash advances to agents upon their renewal interest in business secured; and that it was immaterial to show that the indebtedness of the agent was to the shareholders and not to the policy-holders, the receiver standing for both.

Where a contract between an insurance company and an agent makes the company's ledger account with him conclusive at all times as

to his indebtedness, such account will be held conclusive as between the officers who made the contract and the company, in a suit against them for negligence in relation to such agency, when the account was kept under their direction and there is no clear proof that some proper entry has been omitted.

Argued October 31st, 1901—decided January 8th, 1902.

ACTION by the receiver of an insolvent life insurance company to recover the amount of losses sustained by it through the negligence and wrongdoing of the defendants in making contracts and loaning the company's funds, brought to the Superior Court in New Haven County and tried to the court, *Roraback, J.;* facts found and judgment rendered for the plaintiff to recover $19,869, and appeal by the defendants for alleged errors in the rulings and findings of the court. *No error.*

The finding showed these facts, among others: One Schmidt was appointed by the Connecticut Life Insurance Company, in 1894, general manager for a certain territory, under a written contract. He was to report weekly all business done by him, with the balance due from him, and remit such balance in cash. Upon any failure in these respects he was to forfeit all his claims under the contract. He was to have certain commissions (which in some cases might be 80 per cent) on all policies negotiated by or through him, and for which premiums should have been collected; but he was never actually to retain over 50 per cent of any premiums collected, when making up his weekly account. The company was to remit him monthly any commissions due him on premiums paid into its home office. Its ledger account was to be conclusive evidence of the state of the accounts between the parties.

In 1894, the defendant Doherty was secretary of the company, and the defendant Platt was president. They were salaried officers, active in the management of the business, and *ex officio* members of the board of directors. Both were inexperienced in such business. The company then had a small business, and was drawing on its reserve capital to pay death losses.

In 1895, a new contract was made, of substantially the same tenor, except that the commissions were increased. Any indebtedness due from Schmidt, under the old contract, was to stand as if contracted under the new one.

Platt acted as manager of agencies until 1896, and Doherty thereafter.

Schmidt, from the first, often took notes from parties insured, for premiums, and remitted them to the company with his reports. He had previously been a subagent of the company, and as such had been in the practice of doing the same. Many of these notes were never paid. Some were renewed. The defendants treated and entered all notes thus received from Schmidt as cash, until 1896. Schmidt then took up all those which had been dishonored, by substituting notes of his own, which the defendants treated and entered as cash. They were discounted with the company's indorsement, but its contingent liability as such indorser was not reported to the state insurance department. The company was eventually obliged to take them up, whereupon the amounts so paid were charged to Schmidt's account. Large advances were made Schmidt by the company for office expenses and commissions.

All policies provided that in case of loss any unpaid premiums should be deducted from the amount due. When premium notes held by the company were dishonored, the policies were ordinarily not treated as lapsed. In this respect the defendants followed the custom of many well regulated life insurance companies. Large amounts of new business were written by Schmidt, on receiving only premium notes, which were never paid. His commissions on such business were, under the second contract, in some cases to be 100 per cent. These he charged and received full credit for in his weekly accounts.

Doherty reported monthly to the directors as to the business done with Schmidt, but it did not appear that he informed them fully that notes were being taken from Schmidt as cash, or that policies were reported which had not been paid for.

The defendants were warned by an outside party, in a position to know, that Schmidt was tricky. They represented the company in all dealings with him. The business he wrote was largely bad, and they knew it. The balance due from him, on the company's ledger, in 1897, when his agency was terminated by the company, was over $20,000. Schmidt was a bankrupt. By the exercise of ordinary care by the defendants all the moneys paid by the company on Schmidt's account could have been saved or recovered.

During the life of the contract with Schmidt, he added $3,000,000 to the amount of the company's risks, which previously had been but $6,000,000.

*Lucien F. Burpee* and *William H. Ely*, for the appellants (defendants).

*Henry C. White* and *Leonard M. Daggett*, for the appellee (plaintiff).

BALDWIN, J. The defendants, in all dealings with Schmidt, acted for the company and as its sole representatives. They were its principal officers and were salaried. That they were inexperienced in the business of life insurance did not, if they undertook to conduct it for another, excuse them from exercising such care and skill as ordinarily prudent management might require. This was, in substance, the standard of diligence adopted by the trial court. It remained to apply it to the facts of the case. Unless these were such that no honest, fair-minded and capable men could reasonably come to the conclusion that they showed the defendants to have come short of attaining this standard, the judgment must stand; for it was a conclusion of fact drawn from competent evidence. *Farrell* v. *Waterbury H. R. Co.*, 60 Conn. 239, 257. We have no doubt that it was one which might be fairly drawn.

Exception is taken to the finding that it did not appear how fully the board of directors was informed of the manner in which the defendants were managing matters with Schmidt.

Had their conduct been fully known to and expressly rati-
fied by the board, it would not have relieved the defendants
from responsibility to the plaintiff. It might, in that case,
have been able to maintain a suit against the assenting di-
rectors, for all would have become participants in the wrong
to the company; but it could also have sought its remedy
against the defendants alone. Torts are joint and several.

The charter of the Connecticut Life Insurance Company
was such as to put the board of directors, at all times, in a
fiduciary position as respects both the company and its pol-
icy-holders. There was no provision for a reinsurance re-
serve. *Betts* v. *Connecticut Ind. Asso.*, 71 Conn. 751. The
working capital was small. Assessments on policy-holders
were relied on as a means for meeting death claims. The
managers of such a corporation, as against its policy-holders
or creditors, could not give away its rights by ratifying the
negligent omissions of duty of the corporate officers. That
there were such omissions is a matter of fact which was con-
clusively settled by the finding of the trial court.

Exception is taken to the finding that "the defendant
Platt, as president, was acting manager of agencies" prior to
the appointment of Doherty to that position. This, in the
absence of any other appointment, was a reasonable deduc-
tion from the provision in the constitution that "the execu-
tive committee shall appoint a manager of agencies who shall
be under their control, subject to the direction of the presi-
dent," and the by-laws declaring that "the president shall
be the recognized and responsible head of the association and
shall have the general superintendence of its business," and
"shall be recognized as the legal representative of the as-
sociation."

Nor is there any merit in the claim that the finding that
the defendants knew, early in the course of Schmidt's agency,
the character of the policies written by him to be bad and the
business which he brought unprofitable, was made against
the evidence. Two letters, to refer to nothing else, of the
defendant Platt, one to the defendant Doherty and the other
to Schmidt, legitimately tend to support it.

Exception is taken to the refusal of the trial court to find. that premium notes were accepted from Schmidt as cash on his assurance that they were good, and because the defendants knew that such had been the former custom of the company, and that it was also the custom of old, successful and well-established companies to accept notes in payment of premiums. If these are facts, they are not material ones. A custom of life insurance companies to accept notes in payment of premiums was no justification to these defendants for accepting from an agent, under a contract with him calling for cash remittances, notes as the equivalent of cash, although he might affirm that they were collectible.

The court was also justified in refusing to find that the character of the business written by Schmidt was on the average as good as the character of that written by the other agents of the company. If it was in fact bad, it did not tend to disprove the defendants' negligence that they accepted what was no better, from other sources.

Nor is there ground of complaint because it was not found that the percentage of losses on policies negotiated by him was no greater than that customary on policies negotiated by agents of older, well-established and successful companies. Apart from the question as to its competency or materiality, the testimony as to that point came solely from the defendants, whose knowledge as to the experience of other companies was confessedly limited.

The trial court also declined to make a finding that it was the custom of reliable and successful insurance companies to make cash advances to agents upon their renewal interest in business which they had secured, and that this custom was known to and acted on by the defendants. A custom of a strong company to make such advances to a responsible agent would be no guide to a weak company as to making them to an irresponsible agent, and proof of such a custom could be of no substantial importance, unless not only the character of the company pursuing it, but also that of the agent towards whom it was pursued, had been shown. No evidence of that nature was or could properly have been introduced.

The court properly refused to find that all money retained or received by Schmidt belonged to what the company called its "expense fund," which was recognized in all policies as entitled to the benefit of all the first year's premiums and a portion of all subsequent premiums, and that the indebtedness of Schmidt was really due to its shareholders and not to its policy-holders.   All this was immaterial to the issues. The receiver stands both for the company and its creditors. Nor does labelling a fund in a particular way change its character.   Whatever the company owned was subject to the claims of its creditors, and to be kept primarily for their benefit, except as to profits actually and in good faith divided among its shareholders.

Of the other exceptions to refusals to incorporate particular facts in the finding, there are none which merit discussion. They seem designed to invite a retrial of the whole cause upon its merits.

The appellants ask to have the assessment of damages reviewed.   The contract with Schmidt made the company's ledger account with him conclusive as between him and the company at all times as to the amount of his indebtedness. The Superior Court correctly held that, in the absence of clear proof that some proper entry had been omitted, it was therefore conclusive in favor of the company as against the defendants, by whom its affairs were managed and under whose direction the account was kept.   The balance which it showed to be due from Schmidt, and to have been lost by their negligence, would therefore have been justly due from them to the receiver, had there not been clear proof that Schmidt was entitled to a certain credit which had not been made.   This credit was allowed in assessing the damages for which judgment was rendered.

There is no error.

In this opinion the other judges concurred.