## RUTH A. HARDING *vs.* FRANK T. STAPLES, TRUSTEE (ESTATE OF JOHN S. MEAD).

Third Judicial District, New Haven, January Term, 1930.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued January 21st—decided April 17th, 1930.

*William L. Woodward* of New York City and *John Cullinan,* for the appellant (plaintiff).

*William H. Comley,* for the appellee (Bridgeport Protestant Orphan Asylum).

HINMAN, J. The correctness of the conclusions above stated is the only question raised on the appeal to this court.

It is provided by § 5041 of the General Statutes that "when any executor, administrator or trustee holds or shall hold shares of stock in a private corporation whose use or income belongs to one or more persons, and in which there is a remainder interest in another person or persons, all stock dividends made by such corporation, and all rights to subscribe for new stock in such corporation, shall belong to the trust fund, and shall not be deemed a part of such use or income, unless it is otherwise expressly declared in the instrument creating said trust, or unless in case of a stock dividend, the corporation making such dividend shall expressly declare the same to be made from the earnings of the corporation since the formation of the trust." The disposition made of the stock in question by the trustee was justified and compelled by this statute unless, as the appellant claims, the dividend by which the stock was distributed, although characterized in the resolution above quoted as a stock dividend, was not in fact such but, instead, in nature and effect a cash dividend or, as the appellant also contends, if it was in fact a stock dividend, there was an express declaration by the corporation that the dividend was from earnings since the formation of the trust.

As to the first of these contentions, the characterization of a dividend, in the vote declaring it, is not necessarily controlling. If what is actually a cash dividend be misnamed a stock dividend its character is not changed thereby. The nature and effect of the corporate action is the important factor in determining what shall, as to stockholders, be regarded as capital and what income, but regard should be had not alone to the letter of the vote of declaration but also to the substance and intent of the corporate act. *Green* v. *Bissell,* 79 Conn. 547, 553, 65 Atl. 1056; *Bulkeley* v. *Worthington Ecclesiastical Society,* 78 Conn. 526, 528, 531, 532, 63 Atl. 351.

Undistributed profits or surplus in any form become capitalized only through formal dedication to such corporate uses by effectual corporate action—as through the process of a stock dividend. Investment in corporate property or permanent works does not, of itself, work a capitalization. Capital of this kind "simply constitutes a portion of the corporate assets which are within the discretionary control of the directors, which they may use for the corporate advantage in such ways as have the approval of their judgment, or, if that course seems wiser, cease using and by proper action withdraw from the corporate resources." *Smith* v. *Dana,* 77 Conn. 543, 554, 60 Atl. 117. Neither do surplus earnings partake of the character of income until they are so declared as dividends as to reduce the corporate assets and surplus by the amount of the distribution, release that amount from corporate control, and place it under the dominion of the shareholder. *Bulkeley* v. *Worthington Ecclesiastical Society, supra,* p. 532; *Green* v. *Bissell, supra,* p. 552; *Union & New Haven Trust Co.* v. *Watrous,* 109 Conn. 268, 274, 146 Atl. 727. If separation is so accomplished by such a declaration of a dividend, the corporate assets there-

by become diminished and the shareowners' independent ownership increased; neither the number of outstanding shares of stock nor the amount of the corporate capital is increased, and it is to be treated as a cash and not a stock dividend, as income not capital, and under our rule belongs to the beneficiary entitled to income under a trust, instead of to the principal of the trust fund. *Smith* v. *Dana, supra; Union & New Haven Trust Co.* v. *Sherwood*, 110 Conn. 150, 147 Atl. 562.

While the assets so distributed are usually in the form of cash, there is no difference in principle or effect if they chance to be in some other form of property. For example, in *Green* v. *Bissell, supra,* shares in the corporation itself, once issued to a stockholder but transferred back to the corporation in payment of a debt and held in its treasury, when distributed to stockholders pro. rata were held to be treated as a cash dividend. In *Union & New Haven Trust Co.* v. *Taintor,* 85 Conn: 452, 83 Atl. 697, the Delaware, Lackawanna and Western Railroad Company purchased, with its earnings, certain stock of the Lackawanna Railroad Company which it held among its assets. It declared a thirty-five per cent dividend on its capital stock by distributing the stock of the Lackawanna Railroad Company so held by it to its stockholders. This was held to have the characteristics of, and to be in effect, a cash dividend. "The fact that the distribution was made of the stock held as an asset, rather than in cash procured from its sale, does not affect its character. Cash dividends include all distributions of surplus assets, whether in the form of cash or property, taken from the body of the assets to become the property of the shareholders. . . . Usually the payment of a stock dividend is made by the transfer of surplus assets to capital, while the cash dividend is made by

either the transfer to the stockholder of surplus assets, or their conversion into cash and distribution pro rata among the stockholders." (pp. 455, 456) So if, instead of accomplishing a dissolution of the Brooklyn City Development Corporation and taking transfer of its rolling stock and adding it to its own assets, the Brooklyn City Railroad Company had distributed among its stockholders the stock of the Development Company which it held, this would have constituted a dividend of stock, equivalent to a cash dividend, as in the *Taintor* case, and not a stock dividend.

But if the effect of the action is to increase, by the amount involved, the amount of the corporate capital stock, and work a corresponding increase in the outstanding shares issued in consideration of such capitalization, this amounts to a stock dividend, which, under our statute, belongs to the trust fund, and not to income, with the exceptions presently to be noticed. *Green* v. *Bissell, supra,* p. 551; *Union & New Haven Trust Co.* v. *Taintor, supra; Boardman* v. *Mansfield,* 79 Conn. 634, 66 Atl. 169; *Bishop* v. *Bishop,* 81 Conn. 509, 71 Atl. 583.

The condensed balance sheets of the Brooklyn City Railroad Company, included in the statement of agreed facts, show that the amount of capital stock remained the same ($12,000,000) from 1895 until 1924, when by the increase then effected the total became $16,000,000, involving a corresponding increase of both the number of outstanding shares and the amount of corporate assets so dedicated to the corporate uses as to entitle them to the name of capital, strictly speaking. The book general surplus, which was $600,286.46 as of October 31st, 1919, had increased to $2,607,906.04 as of March 31st, 1924, and to $2,993,490.69 as of July 31st, and was retained, in the amount of $2,815,917.76 after the stock issue of September 30th. In the bal-

ance sheet of April 30th, 1924, there also appears, for the first time, an item denominated "special surplus," of $4,395,380.24, which continued of the same amount in the statement of July 31st. This item significantly approximates in amount the sum ($4,260,000) spent in acquiring all of the capital stock of the Brooklyn City Development Corporation, which money was used by that company for the purchase of cars. This rolling stock, as a part of the transaction attending the increase of capital stock and as a condition precedent, imposed by the transit commission, to such issue, was transferred to the Brooklyn City Railroad Company and became part of its assets, in substitution for the Development Corporation stock previously held by it. This readjustment is reflected in a reduction, between July 31st and September 30th, of $4,260,000 in the item of "free investments" and increase in the item of "fixed capital." Also, as between the statement of July 31st and that of September 30th, the item of special surplus shows a reduction of $4,000,000, indubitably representing the transfer of the amount of the capital stock increase from surplus to capital which was the necessary result of such increase.

The facts abundantly establish the conversion of surplus assets into strict capital which is one of the distinguishing attributes of a stock dividend; they also satisfy another significant incident of such a dividend in that each stockholder, by the receipt of his pro rata proportion of the new issue, added nothing to his proportionate ownership of the assets of the corporation. "His holding, after the new issue, bears precisely the same ratio to the total of the outstanding shares of the corporation as did his previous holding to the previous total." *Green* v. *Bissell, supra,* p. 551. "It does not add to his ready cash, but it changes the form of his investment by increasing his number of

shares, thereby diminishing the value of each share, leaving the aggregate value of all his stock substantially the same." *Terry* v. *Eagle Lock Co.*, 47 Conn. 141, 165. The distribution in question, therefore, was a stock dividend in fact as well as in name and under § 5041 belongs to the trust fund, unless there be present one of the statutory exceptions to the rule, viz: a provision otherwise in the instrument creating the trust (confessedly absent here) or an express declaration by the corporation that the dividend is "made from the earnings of the corporation since the formation of the trust." The appellant asserts that this latter condition is met by a communication signed and sent to stockholders by Frank Lyman, president of the Brooklyn City Railroad Company, under date of January 24th, 1924, in which he stated: "Since October, 1919, when the properties of your Company, formerly leased to The Brooklyn Heights Railroad Company were returned, your Company has deliberately withheld dividends from its stockholders and has made capital expenditures out of earnings in excess of $4,000,000 to increase its facilities, in order that it might render the best possible service to the people of Brooklyn. Your directors appreciate the sacrifice made by the stockholders in the interests of the Company and of the traveling public. To enable your Company to fully meet the increasing volume of its business, to improve its credits, its facilities and its service, it is necessary to readjust its security issues and capital account. It is therefore proposed to apply to the Transit Commission of the State of New York for authority to issue additional capital stock of the par value of $4,000,000 and to issue these shares to the stockholders who have foregone dividends in a greater amount."

It may be a fair inference therefrom that surplus

earnings for the period mentioned—from October 19th, 1919—above the dividends paid (which, it appears elsewhere, amounted to $2,200,000) had been devoted toward capital expenditures, but there is no definite statement that such expenditures were confined to earnings for that or any other specified period or to earnings exclusively; indeed, in an extended communication reviewing the financial history of the company, sent to stockholders subsequent to the declaration of the dividend in question, it is stated that these expenditures for capital purposes were made "from the earnings and cash receipts." We think the president's letter is to be regarded merely as in the nature of an argument in furtherance of authorization of the proposed readjustment of security issues and capital account by the stockholders at the special meeting the notice of which was accompanied by the letter. At most it does not constitute the deliberate and definite declaration by the corporation which the statute contemplates. The infirmity is that the statement is made by the president, instead of by the directors, and without any express or implied authority, disclosed by the record, to make on behalf of the corporation the declaration which the statute requires. *Vincent* v. *Alexander's Sons Co.,* 85 Conn. 512, 515, 84 Atl. 84; *New Haven Trust Co.* v. *Doherty,* 74 Conn. 353, 357, 50 Atl. 887; *Bowditch Furniture Co.* v. *Jones,* 74 Conn. 149, 50 Atl. 41; 4 Cook on Corporations (8th Ed.) § 716.

The intent and effect of § 5041 of the General Statutes is that the general rule prescribed by it shall be followed unless the express statement working an exception thereto be embodied in the resolution of the directors by which the stock dividend is declared, or made by some other formal and authoritative action by the directors or stockholders. To construe the statute as admitting of the exception upon an expression

of individual opinion or conclusion, or a declaration made by an officer of the corporation without definite authority to do so, would defeat its paramount purpose of relieving from confusion and uncertainty by providing a plain, simple, and workable rule for the guidance and protection of fiduciaries in the allocation of stock dividends. The requirements of the exception are not met in the present instance, the general rule applies, and the action of the trustee, being in conformity thereto, was correct. The trial court rightly so held.

There is no error.

In this opinion the other judges concurred.