THE SOUTH NORWALK TRUST CO., TRUSTEE
*vs.*
EDITH J. KNAPP ET ALS.

Superior Court          Fairfield County          File No. 56965

MEMORANDUM FILED MARCH 15, 1940.

*Arthur Weiss,* of Bridgeport; *Margaret Connors,* of Bridge-port, for Heirs of Life Tenant.

*Keogh & Candee,* of South Norwalk, for Remaindermen.

O'SULLIVAN, J.   William Buchanan died at Norwalk in 1910, leaving a will which was duly admitted to probate. Upon the settlement of his estate, the remainder was turned over to predecessors of the plaintiff to be held in trust for the life use of Edward G. Buchanan.   Edward died in 1934, and the pur-pose of the trust having thereby been terminated, the plaintiff brought this action, seeking, through a declaratory judgment, an answer as to the proper disposition of various stock divi-dends, received by the trustees during Edward's lifetime.   The litigation ·is simply the resurrection, in new garb, of the time-honored dispute as to whether such dividends are principal and belong to the remainderman or are income and pass to the life tenant or his heirs.

It is admitted that all of the dividends referred to in both counts represent the capitalization of surplus and are true stock dividends within the accepted definition. The first count deals with those declared by Westinghouse Air Brake Company in 1912, 1913, 1917 and 1923. The shares of stock received from these dividends were later split on a 4 for 1 basis, so that the plaintiff now has in its possession 1,256 shares. Of these, it has been conceded that 332, being those traceable to the dividend of 1912, are to be deemed principal and pass to the remaindermen, thus limiting the controversy to the ownership of the remaining 924 shares.

The pertinent portion of section 4966 of the General Statutes, Revision of 1930, reads as follows: "When any.... trustee shall hold shares of stock in a private corporation whose use or income belongs to one or more persons, and in which there is a remainder interest in another person or persons, all stock dividends made by such corporation....shall belong to the principal of the trust fund, and shall not be deemed a part of such use or income, unless....the corporation making such dividend shall expressly declare the same to be made from the earnings of the corporation since the formation of the trust."

In effect, this statute first codifies the common law that all stock dividends are principal and belong to the remainderman (*Smith vs. Dana,* 77 Conn. 543), and then creates a solitary exception to the rule by providing that when "the corporation ....shall expressly declare the same to be made from the earnings of the corporation since the formation of the trust", such a stock dividend shall be classified as income passing to the life tenant.

The heirs of Edward Buchanan take the position that the foregoing exception means this: that, though the directorate, when declaring the dividend and at all other times, is as silent on the subject as a sphinx, the dividend is income and belongs to the beneficiary, if the annual reports or other financial statements, to which the directors have given their approval, demonstrate that earnings since the formation of the trust have, in fact, been the source of the dividend.

To accept such an interpretation would, it seems to me, violate the principles of acknowledged statutory construction, ignore the clear intention of the Legislature, and be productive of the same vexed dilemmas which prompted the adoption of the common-law rule in *Smith vs. Dana.*

For in the first place, a statute in derogation of the common-law—and this is exactly what the exception amounts to—is not permitted to operate with unbridled freedom. When an exception to a general rule is created by legislative action, its construction should be strict and its language limited to its evident intent. *Patten vs. Smith,* 4 Conn. 450, 454; *Bickart vs. Sanditz,* 105 id. 766, 772. "The court is to go no faster and no farther than the Legislature has gone." *Willoughby vs. New Haven,* 123 Conn. 446, 454, quoting *Howard vs. Howard,* 120 Me. 479, 480. That the Legislature saw fit to make one inroad on the common-law rule is no justification for a court to open up another.

Nor is the statute muddled by ambiguous diction. The language is clear and there is no choice but to apply it as it is expressed. *Guhring vs. Gumpper,* 117 Conn. 548, 552. Excluding the last six words, which are not vital to the issue under discussion and over whose meaning parties may disagree, the remainder is so plain that he who runs may read and understand, if he so wishes. Had the Legislature intended that all stock dividends, if proven to be from earnings since the formation of a trust, should be deemed income, it could easily have said so. But it refrained from going that far. Try as they may, the heirs of the life tenant cannot erase the words "expressly declare" from the exception and as long as they remain in it, nothing short of an express declaration by the directors or the stockholders as to the source of the dividend will suffice to change the character of the dividend as principal. And the approval by the directors of the annual statements will not, of itself, supply the defect, for such action "does not constitute the deliberate and definite declaration by the corporation which the statute contemplates." *Harding vs. Staples,* 111 Conn. 325, 334.

But, counsel urge, it is highly unjust to permit great values to be swept from the hands of a life tenant, simply because a board of directors fails to embody in its vote a statement as to the source of a dividend, though the fact may be that the only source was from earnings which one may conclusively demonstrate have been made since the formation of his trust. That may be true, but if it is, the Legislature is the forum to approach. It might be said, however, in passing, that Connecticut's present policy is diametrically opposed to the life tenant's position, as witness the repeal of the exception to the

statute under discussion by the last General Assembly (Supp. [1939] §1295e).

But this injustice, if such it be, is more apparent than real. The statute does not present and insurmountable barrier to the life tenant. The settler had within his power the means of circumventing any injustice of which complaint might be had. If he was not satisfied with the manner in which the statute would operate, a few additional words in his trust instrument would have made impossible the consequences that now are called harsh. The insertion of a provision that any or all stock dividends should be deemed income would have furnished a means of accomplishing what the statute prevents.

To indicate the extent to which counsel would have the court go in an unneeded interpretation of the statutory exception, I venture to state the following rule which, they insist, should govern this case and all others.

"Proposed rule for guidance of trustees in this and similar cases.

"Let the trustee:

"1. (a) Ascertain the earned surplus as shown in the annual report approved by the directors next after the formation of the trust.

(b) Ascertain whether this earned surplus has been depleted by cash dividends or in any way other than by payment of a stock dividend. If it appears conclusively that this prior earned surplus has been reduced, then establish the net earned surplus after such deductions are made.

"2. Ascertain from the annual statements the balance of the earned surplus remaining after deduction of the first stock dividend.

(a) If·the remaining surplus is greater than the net surplus accrued prior to the formation of the trust as established in (1) above, then the stock dividend is a payment entirely out of earnings since the formation of the trust and is income to the life tenant.

(b) If the remaining surplus is less than the net surplus accrued prior to the formation of the trust as established in (1) above, then the stock dividend is not a payment entirely out of earnings since the formation of the trust and goes to the remainderman.

"3. If the situation in (2b) is found to apply, then ascertain if the remaining surplus at this point is further reduced by anything other than a stock dividend and if so, establish the reduced balance of the surplus at that point. This established surplus now becomes the maximum residue of the earnings accrued prior to the formation of the trust."

The very recitation of the foregoing is, it seems to me, the most cogent argument against its adoption and makes all the more desirable that simplicity to which *Smith vs. Dana* referred so eloquently. To pursue the proposed rule might create a paradise for the jurist who loves to wander in a labyrinth of figures, but even to such an anomoly of the bench the gifts of the soothsayer do not attach.

For earnings are not synonymous with surplus, which may, and often does include a wide variety of elements. It may be built up by paid-in surplus, which notably occurs in the establishment of certain financial institutions. It may embrace the gain accruing upon the retirement of a concern's own securities, purchased in the market below the price at which they were issued. It may include the increase which a reappraisal of physical assets demonstrates they possess beyond the value at which they have been previously carried. And, of course, it may reflect earnings which have from time to time been made.

The annual reports of many corporations fail to break down surplus accounts. Indeed, some of the voluminous financial statements in evidence in this case are of that character. When the directors are silent on the subject, by the application of what theory may a court conclude that so much of surplus as represents earnings has been capitalized to make possible a stock dividend? Or if it be conceded that the surplus account reflects nothing but earnings, how may a court conclude, where again the directors have been silent, that only those earnings made since the formation of the trust have been employed to create the dividend, where the surplus account includes earnings from years both before and after the creation of the trust?

As a partial answer to this, it is urged that where earnings enter surplus in given years such as 1937, 1938 and 1939 amounting, let us assume, to $1,000,000 each year, and, during 1940, a stock dividend of $1,000,000 is declared, the earnings of the year 1937 will be deemed devoted to capitalization, should the directors fail to make any express declaration on

the subject. If this theory is entitled to a name, it might well be called "first in, first out."

The foregoing answer is neither appealing nor sound. Corporate practice does not conform to it and accountancy does not recognize it. Surplus is not fabricated from items appropriately tagged with the year of their entrance into the account, the first in, to march like soldiers, the first out. Directors may handle the elements in surplus as they desire, but that is their function, not a court's.

Consequently, the interpretation of the statute proposed by the heirs of the life tenant cannot be accepted, as it would violate the clear, intelligible language of the Legislature, drafted to provide a practical rule and thus to avoid the dilemmas which the experience of the common law demonstrated should be obviated.

Nor does the theory of the remaindermen commend itself to logic or reasonableness. For their theory, strange as it sounds, may best be understood from the following illustration: If the date of the formation of a trust created by my neighbor, John Smith, is April 15, 1927, no stock dividend may ever be deemed income unless the directorate expressly votes to declare it from earnings "since the formation of the trust of John Smith on April 15, 1927."

This theory would not warp the statute; it would annihilate it. For a directorate to incorporate in its vote any reference to a trust of which, speaking generally, it had no knowledge, would furnish an illustration more rare than a dodo, and dodoes are now extinct. The statute does not require the dividend vote to mention the name of the trust or specify the exact date of its formation. To hold otherwise would be the climax of absurdity.

Accordingly, the conclusion is reached that in the absence of some formal vote of the directors or stockholders expressly stating that a stock dividend is created out of earnings from such a time as to establish their accrual since the formation of the trust, such a dividend is principal and belongs to the remainderman. *Harding vs. Staples, supra.*

The votes of the directors of Westinghouse Air Brake Company for the stock dividends of 1913 and 1923 are devoid of my express declaration as to their source. The same situation

prevails as to the vote of the directors of the United States Steel Corporation in declaring the stock dividend of 1927, on which the second count is based. Hence, these dividends are principal and belong to the remaindermen, Edith J. Knapp and Anna S. Perrin.

A somewhat different situation is presented by the Westinghouse dividend of 1917. In declaring that dividend the directorate voted that it "be paid for at par out of the fund known as 'surplus accrued to February 28, 1913,' that is to say, out of earnings or profits of this company accrued prior to March 1, 1913." While this vote is somewhat exceptional in that it refers to earnings prior to rather than since a certain date, it is obviously an express declaration as to the source of the dividend. But the statute requires something more than an express declaration. · Before the dividend may be called income, the directors must state that its source is limited to earnings from those years during all of which the trust has been alive.

In the instant case, these years run from January 20, 1910, for the date of the death of the settler, William Buchanan, fixes the time of the formation of his trust. Restatement, Trusts §234; *Matter of Bird,* 241 N.Y. 184.

The Westinghouse vote of 1917 placed no limitation upon the years whose earnings were to provide the means for the dividend, which withdrew from surplus $3,949,193.33. I am satisfied that a portion of this amount came from earnings made after July 31, 1910. What that portion may be is unknown and is incapable of being ascertained. The life tenant's heirs have a theory from which they conclude an irreducible minimum of $1,477,632.21 of earnings since 1910 entered the total of $3,949,193:33.

They work out their theory in this fashion. On July 31, 1910, the earned surplus of the company was $6,931,760.64 (Ex. H-1). A year later, by the addition of earnings for the fiscal year ending July 31, 1911, the surplus account was increased to $7,054,894.45 (Ex. H-2). During the course of the next fiscal year, a stock dividend of $4,583,333.33 reduced surplus to $2,471,561.12, which, by means of earnings during the year, was increased to $3,398,214.50 by July 31, 1912 (Ex. H-3). From this last mentioned date until March 1, 1913, the company's undistributed earnings amounted to

$1,650,617.63, so that as of that date the surplus was $5,048,-832.13 (Testimony of Martin, page 46 of his deposition).

Continuing, they say, the greatest amount of earnings made prior to July 31, 1910, which remained in the surplus account after the 1912 stock dividend of $4,583,333.33 was declared, was $2,471,561.12 (Ex. H-3). Therefore as the dividend of 1917 required $3,949,193.33 (Ex. E), at least $1,477,632.21 must have come from earnings since July 31, 1910. From this, they argue that they are entitled to such a proportion of the stock dividend as the latter figure bears to the former.

Assuming these figures are correct, there is an equity that seems to be theirs to receive the proportion which the calculations establish. And yet, one constantly reverts to the statute, which, as has been indicated, is in derogation of the common law and must be strictly construed. This is particularly appropriate in approaching a statute which was unquestionably conceived to make understandable to the many trustees the rule by which, in the performance of their duties, they were to allocate stock dividends to principal or income.

I do not entertain the slightest doubt that the purpose of the Legislature, in modifying the common law, was to establish a plain, though arbitrary, standard which it felt was desirable as an effective means of avoiding the same perplexing questions which had justified the courts in formulating the equally arbitrary but simple rule enunciated in *Smith vs. Dana*. It sought no formula by which justice could be reached in all cases with the nicety of the micrometer. Perfection cannot be claimed for the statute. But what can be claimed for it is that, like the common-law rule, it provides a relatively simple guide for trustees to follow and courts to employ, and by its application a closer approximation to justice and equity will be attained than through the use of another rule requiring one to go behind the declaration of the directors, hopefully searching for the equities of each case according to some theoretical ideal. *Smith vs. Dana, supra.* One may call the exception arbitrary if he wishes, but he must concede the relative simplicity of its application.

One cannot claim an equity under a statute unless he can bring himself within it. The directors did not expressly declare the dividend from earnings since 1910. Such a declaration is a *sine qua non* to the right of the life tenant and his heirs to any portion of the dividend.

Accordingly, the trustee is advised that all of the stock dividends and the cash are to be deemed principal and belong to the remaindermen.

Whether or not counsel are entitled to fees, and if so, to what amount, is not decided at this time. If all of the attorneys will meet at my chambers in New Haven on the morning of March 25th, they will be given an opportunity to be heard. Until the matter of fees is disposed of, judgment shall not enter.