[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Mohinder P. Chadha, M.D., filed an amended complaint on July 23, 1999, against defendants Myer B. Shimelman, M.D. (Shimelman) and Neil J. Grey, M.D. (Grey). The plaintiff alleges that the defendants acted in reckless disregard of the plaintiff's rights by taking action against the plaintiff's license to practice medicine. Grey is the medical director of the Physicians Health Program (PHP) of the Connecticut State Medical Society. In his capacity as medical director of the PHP, pursuant to a report from the Charlotte Hungerford Hospital, Grey referred the plaintiff to Shimelman for an evaluation in order to obtain further information for the Connecticut State Medical Society. Shimelman's opinion, which was forwarded to Grey, was that the plaintiff could not at the time practice psychiatry with reasonable skill and safety. Grey reported Shimelman's opinion concerning the plaintiff to the Connecticut Department of Public Health (the "department"). The department filed a motion with the Connecticut Medical Examining Board (the "board") seeking suspension of the plaintiff's license to practice medicine pursuant to General Statutes § 19a-17 (c). On May 20, 1997, the board summarily suspended the plaintiff's license to practice medicine in Connecticut pending a final determination by the board. In January 1998, the board issued a final decision ordering the immediate suspension of the plaintiff's license.
The defendants have filed a motion for summary judgment pursuant to Practice Book § 17-44, arguing that there is no genuine issue of material fact and they are entitled to judgment as a matter of law.
STANDARD FOR SUMMARY JUDGMENT
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." QSP, Inc. v. The Aenta Casualty Surety Co., 256 Conn. 343, 351 (2001). A "material" fact is one that will make a difference in the outcome of the case. Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 578 (1990). "The function of the trial court is to determine, in applying the summary judgment rules, whether an issue of fact exists but not to try that issue if it does exist." Michaud v. Gurney, 168 Conn. 431, 433, 362 A.2d 857 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Mac's CarCity, Inc. American National Bank, 205 Conn. 255, 261 (1987); Kakadelisv. DeFabritis, 191 Conn. 276, 281 (1983); Dowling v. Kielak, 160 Conn. 14,16 (1970); Dorazio v. M.B. Foster Electric Co., 157 Conn. 226, 228
CT Page 8863 (1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party."Appleton v. Board of Education of Stonington, 254 Conn. 205, 209 (2000).
"Once the moving party has submitted evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." Scrapchanskyv. Plainfield, 226 Conn. 446, 450 (1993). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court. . . ." (Internal quotation marks omitted.) Id. "The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist."Hammer v. Lumberman's Mutual Casualty Co., supra, 214 Conn. 579.
"The party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denial but must set forth specific facts showing that there is a genuine issue for trial." Sivek v.Baljevic, 46 Conn. Sup. 518, 521, aff'd 60 Conn. App. 19 (2000).
THE IMMUNITY ISSUE UNDER GENERAL STATUTES §§ 19a-20 AND 19a-17b
The plaintiff in this matter was the subject of an administrative proceeding involving the plaintiff's license to practice medicine. The board is a division of the department, a state agency. See General Statutes § 20-8a. The board is authorized to restrict, suspend or revoke a physician's license or limit the right of a physician to practice in the state. The board derives its authority from §§ 19a-17,20-8a and 20-13c. "While none of these statutes expressly resolve the question that we confront in this case, all three confer authority upon the board to revoke licenses. Our first order of business, then, is to reconcile these interrelated provisions in order to achieve a sensible overall interpretation that is faithful to the intent of the legislature." Stern v. Connecticut Medical Examining Board, 208 Conn. 492,498 (1988).
"Subsection (a)(1) of General Statutes § 19a-17 gives the board the authority to `[r]evoke a practitioner's license'. . . . The term `practitioner' is not defined by the statute. From the context of the statute, however, it is obvious that [§] 19a-17 is designed to be an omnibus charter of available disciplinary sanctions for many professional boards and commissions. It is therefore not surprising that [§] 19a-17
employs the general term `practitioner' to describe the class of persons subject to its terms. The terms of [§] 19a-17 define the outer limit CT Page 8864 of the disciplinary jurisdiction of boards and commissions within the department of health services. Whether separate provisions that govern specific professions narrow the scope of [§] 19a-17 must be determined on a case-by-case basis." (Emphasis added.) Id., 498-99.
"General Statutes [§] 20-8a implements the general mandate of [§] 19a-17 for the profession of medicine and surgery. Subsection (e) of [§] 20-8a provides that the `board shall (1) hear and decide matters concerning suspension or revocation of licensure, (2) adjudicate complaints against practitioners and (3) impose sanctions where appropriate.' Rather than conferring new powers or limiting ones already conferred, [§] 20-8a creates an administrative agency for the supervision of physicians and vests that agency with authority to impose the disciplinary actions set forth in [§] 19a-17." Id., 499-500.
"Finally, General Statutes [§] 20-13a authorizes the board to `restrict, suspend or revoke the license . . . of a physician' for any of seven specified reasons. This section was enacted in 1976 as part of an overhaul of the licensure regulation of Connecticut physicians. Prior to 1976, physicians were subject to license regulation under General Statutes (Rev. to 1975) [§] 20-45, a general provision that applies to `any licensed or registered practitioner of the healing arts in this state.' With the passage of Public Acts 1976, No. 76-276, however, the legislature established new rules for use in licensure proceedings exclusively against physicians. At the very least, the legislature's judgment that physicians are to be evaluated under a separate licensure regime causes us to pay particular heed to its detailed provisions." Id., 500-01.
General Statutes § 19a-14 (a) (10) authorizes the department to conduct investigations regarding "possible violations of statutes or regulations, and disciplinary matters." Pursuant to § 19a-14 (b)(1), the department's investigative authority extends to matters concerning the board. Section 20-13e (a) requires the department to "investigate each petition filed pursuant to section 20-13d, in accordance with the provisions of . . . section 19a-14 [(10) (a)] to determine if probable cause exists to issue a statement of charges and to institute proceedings against the physician under subsection (e)." Here the summary suspension of the plaintiff's license was ordered pursuant to General Statutes § 19a-17.
The fundamental purpose of the statutes regulating physicians' licenses is "to regulate the profession in the public interest. . . ." Jaffe v.State Department of Health, 135 Conn. 339, 344 (1949). The Connecticut legislature has chosen to grant immunity to "[a]ny member of a medical review committee for any act or proceeding undertaken or performed within CT Page 8865 the scope of any such committee's functions . . .; General Statutes § 19a-17b (c); and to "[members] of any board or commission . . . and [persons] making a complaint or providing information to any of such boards or commissions or to the Department of Public Health as part of an investigation. . . ." General Statutes § 19a-20.
As part of its decision making process the board considers documentary evidence and conducts quasi-judicial hearings. See General Statutes § 20-13e (e). The actions of the defendants here, i.e., the communication of Shimelman's opinion to Grey and the forwarding of the opinion by Grey to the department were undertaken in connection with the administrative process. Generally, persons who testify or make statements in affidavits in connection with judicial and quasi-judicial proceedings are absolutely immune from civil liability for defamation. Petyan v.Ellis, 200 Conn. 243, 251-53 (1986). Board proceedings are considered quasi-judicial. See Paley v. Connecticut Medical Examining Board,142 Conn. 522, 526 (1955); Gibson v. Connecticut Medical ExaminingBoard, 141 Conn. 218, 221-22 (1954). Nevertheless, the immunity provided by §§ 19a-17b and 19a-20 is qualified rather than absolute.
The court has found no case law on the issue of the immunity provided by §§ 19a-17b and 19a-20. The court must therefore be guided by the plain meaning of the statute and general principles of statutory construction. "When interpreting a statute, courts should accord a statutory enactment its plain meaning. . . . Moreover, the meaning of statutory language must be determined from a reading of the statute as a whole. . . . We may not, by construction, read a provision into legislation that is not clearly stated therein." Hyllen-Davey v. Plan Zoning Commission, 57 Conn. App. 589, 595, cert. denied, 253 Conn. 926
(2000). We are also mindful that "statutes in derogation of private rights should be strictly construed. . . ." (Citations omitted.) Springv. Constantino, 168 Conn. 563, 570 (1975).
Sections 19a-17b and 19a-20 are statutes in derogation of common law in that a statement regarding a lack of skill in one's profession, which might otherwise be the basis of a claim based on libel per se, may not be actionable without evidence of "malice," and must be construed strictly. "[W]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope. . . . The rule that statutes in derogation of the common law are strictly construed can be seen to serve the same policy of CT Page 8866 continuity and stability in the legal system as the doctrine of stare decisis in relation to case law." (Brackets in original; citations omitted; internal quotation marks omitted.) Lynn v. HaybusterManufacturing, Inc., 226 Conn. 282, 289-90 (1993).
Strict construction in this case requires the court to view the words "without malice." "[A] statute in derogation of common law . . . is not permitted to operate with unbridled freedom. When an exception to a general rule is created by legislative action, its construction should be strict and its language limited to its evident intent." South NorwalkTrust Company v. Knapp, 8 Conn. Sup. 101, 104 (1940), aff'd 128 Conn. 426
(1941).
As stated above, the board is an administrative agency acting in a quasi-judicial capacity. "It is required to weigh evidence and reach conclusions. . . . But in so doing, it should be circumspect about accepting uncorroborated testimony which consists, in the main, of a statement of oral admissions claimed to have been made by the person summoned to answer charges of professional illegalities or improprieties. . . . [A]s an administrative tribunal, [the board] . . . should not ordinarily find a professional man guilty of a charge leveled against him where proof of the act of wrongdoing is based solely on the uncorroborated evidence of persons testifying to claimed admissions by the party under attack." (Citation omitted.) Paley v. Connecticut MedicalExamining Board, supra, 142 Conn. 526-27. There is, however, nothing which precludes the board from accepting such evidence as support for its conclusions and, as per the statute, the provider of information has immunity absent a showing of "malice."
THE MALICE REQUIREMENT
The plaintiff argues that questions of motive, intent and bad faith are questions for the trier of fact. See Wadia Enterprises, Inc. v.Hirschfeld, 224 Conn. 240, 250 (1992). Even with respect to issues dealing with state of mind, however, "the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." Id. "The summary judgment procedure would be rendered sterile if an otherwise valid motion could be defeated by the mere claim that issues of intent or state of mind were at issue without providing a factual basis therefore." Wang v. Frankl, Superior Court, judicial district of New Haven at New Haven, Docket No. 391493 (Oct. 18, 1999, Thompson, J.), citing Reynolds v. Chrysler First Commercial Corp.,40 Conn. App. 725, 731, cert. denied, 237 Conn. 913 (1996).
A qualified privilege exists under the statutes, therefore the burden is on the plaintiff to show actual malice. See Podgurski v. Grey, United CT Page 8867 States District Court, Docket No. 2284 (D.Conn. May 8, 2000). "The phrase `actual malice' is unfortunately confusing in that it has nothing to do with bad motive or ill will." Jones v. New Haven Register, Inc.,46 Conn. Sup. 634, 649 (2000), citing Harte-Hanks Communications, Inc.v. Connaughton, 491 U.S. 657, 666 n. 7, 109 S.Ct. 2678, 105 L.Ed.2d 562
(1989). "[A]t a minimum, actual malice requires that there be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the publication." (Internal quotation marks omitted.) Woodcock v. Journal Publishing Co., Inc., 230 Conn. 525,537 (1994), cert. denied, 513 U.S. 1149, 115 S.Ct. 1098,130 L.Ed.2d 1066 (1995).
Thus, the real question to be addressed by the court is whether the allegedly defamatory publication was made "with knowledge of falsity or reckless disregard as to truth or falsity." Jones v. New Haven Register,Inc., supra, 649. It is the plaintiff's burden to prove this. Id. Reviewing the evidence before the court, it is clear that the plaintiff has not met this burden.
THE CLAIM AGAINST DR. SHIMELMAN
Shimelman gave an opinion as requested by Grey. The plaintiff in his complaint alleges that the Shimelman evaluation was "deplorably inadequate" and "was made with reckless indifference to the right of the plaintiff to practice his chosen profession." (Amended Complaint dated 07/23/99, Count One, ¶ 8.) The plaintiff opposes this motion contending that other physicians offered opinions contrary to Shimelman's opinion.
A difference of opinion simply does not substantiate a finding of malice under the definitions previously set forth. There exists no issue of material fact as to the element of actual malice, in that there is no evidence that the statements were made with the knowledge that they were false or with reckless disregard of whether they were false or not. For this reason, Shimelman is entitled to judgment as a matter of law. Therefore, the court grants the motion for summary judgment as to the first count of the plaintiff's amended complaint which sets forth a cause of action for defamation against Shimelman.
THE CLAIM AGAINST DR. GREY
Grey was contacted by the hospital in his capacity as medical director of the Connecticut State Medical Society's PHP and reported a concern that the hospital had regarding the plaintiff. Grey then referred the plaintiff to Shimelman for an evaluation and forwarded that evaluation to the department in accordance with the terms and requirements of General CT Page 8868 Statutes § 20-13d. The plaintiff has produced no evidence as to why Grey, who is not a psychiatrist, "knew or should have known" that the report from Shimelman was inadequate. The fact that Grey did not investigate the report from Shimelman does not equate to malice.
"[A] failure to undertake an adequate investigation is not dispositive of the issue of actual malice." Woodcock v. Journal Publishing, supra,230 Conn. 545. "[T]he burden of proof placed on the plaintiff is a difficult one." Id., 546. "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Id., citing St. Amant v. Thompson,390 U.S. 727, 731 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).
Here, the plaintiff has not produced evidence demonstrating that Grey entertained serious doubts as to the truth of the report or that the statements which were reported were reported with the knowledge that they were false or with reckless disregard of whether they were false or not. Thus, the plaintiff has failed to demonstrate that Grey acted with actual malice. In arriving at this conclusion, the court recognizes that the burden of proof placed on the plaintiff is a difficult one.
Therefore, the court grants Grey's motion for summary judgment as to the second count of the plaintiff's amended complaint on the grounds that there exists no issue of material fact as to the element of actual malice and that he is entitled to judgment as a matter of law.
Cremins, J.